[L. A. No. 14185. In Bank.—October 25, 1933.]

A. H. MAUER, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

A. H. Mauer, *in pro. per.,* and Charles W. Cradick for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—In this proceeding to review the recommendation of the Board of Bar Governors, that petitioner be disbarred from practicing law, there are involved two distinct and separate complaints which were consolidated before the recommendation of the board was voted. In our treatment of them we shall first consider solely the charges contained in the complaint verified by Mrs. A. H. Sheldon, after which we shall detail the circumstances and contentions arising out of the second complaint preferred by one C. J. Pfiffner.

## The Sheldon Complaint.

In effect petitioner was accused of having falsely and fraudulently represented the value of four certain lots in San Diego, their location with respect to the city itself, their availability as a part of property to be chosen for a municipal airport, and that they were clear of encumbrance. The charges were substantially those upon which the complaint for rescission was based in an action between Zelda Sheldon and petitioner in which judgment was rendered against the petitioner and on appeal affirmed by the court. (*Sheldon* v. *Mauer,* 215 Cal. 327 [9 Pac. (2d) 833].) The charges were heard before local administrative committee number eight, which found petitioner represented to Mrs. Sheldon that the lots were worth $1800 each, when in fact they were of a value not to exceed $50 each and further that they were a part of acreage which "would in all probability

be accepted as the site of the proposed Lindbergh airport in San Diego'', when that site had been selected at a point some miles distant about a year previous to the time of the conversations with Mrs. Sheldon. It also found that petitioner was guilty of acts involving moral turpitude, dishonesty and unprofessional conduct, because he had ''knowingly and willingly, and with intent to defraud and cheat the complainant, misrepresented the location and the value of his properties in San Diego''. As a result the committee recommended his suspension for a period of eighteen months. In the meantime the other complaint, which we will discuss later, had been filed.

The petitioner contends with respect to this first ‘complaint that the evidence is not sufficient to support the findings; that the decision and recommendation are contrary to law because the committee concluded the taking of evidence on October 27, 1931, but did not arrive at a recommendation until August 17, 1932, and further he asserts that the conclusion of the board upon both charges would, if sustained, inflict upon him extreme, cruel and unusual punishment.

■ The major portion of petitioner's briefs, however, is devoted to an effort to show that the evidence is insufficient to sustain the findings and in this undertaking he endeavors to show discrepancies between the testimony of Mrs. Sheldon in the civil action and in the hearing now under consideration. While we are not inclined to detail the evidence, all of which we have carefully read, it is but just to say that the testimony of the petitioner and his witnesses is in sharp conflict with the testimony of Mrs. Sheldon and those produced to corroborate her statements. Yet the so-called inconsistencies relied upon by petitioner are, to say the least, no less explainable than are those in the evidence relied upon by him. These facts remain undisputed. Petitioner inserted in a Los Angeles newspaper an advertisement reading substantially as follows: ''Have four lots S. D. Valuation 1800 ea. Will trade one or more for equity L. A. home, quick deal . . . '' These lots were entirely unimproved in a paper subdivision of low marsh-land, five or six miles from the center of San Diego, with no known sales for cash ever having occurred. The deal was consummated in Los Angeles where the parties resided. The San Diego airport site had been selected about a year before. As already indicated,

we are not inclined to set down further details. Petitioner had ample opportunity in the tribunal which heard the civil action, as well as on appeal, to demonstrate the claimed lack of merit in the testimony adduced against him, and also had a full and complete hearing before the administrative committee. Furthermore, our reading of the transcript discloses that the findings were fully justified.

There is no merit in the contention, because ten months elapsed between the submission of the charges and the recommendation of the committee, that the decision is contrary to law. Our attention has been directed by both sides to the case of *Sheldon* v. *Mauer, supra,* and volume II of the transcript therein was introduced here. Aside from all other considerations we may well surmise that the committee was awaiting (and properly so) the final determination of that cause, which was decided March 31, 1932.

The contention that petitioner will be subjected to cruel and unusual punishment if the recommendation be approved will be considered after discussing the remaining charges.

### The Pfiffner Complaint.

So far as this branch of the case is concerned, and because the others were found to be untrue, we will consider only the charge and the finding by the local administrative committee number nine to the effect that petitioner collected from one Christine Grady on August 11, 1931, the sum of fifty dollars, as an attorney's fee in a case entitled *Pfiffner* v. *Leggett,* the complaint in which sought no attorney's fee, and the contract upon which action was founded provided for no such fees, and did not account therefor to Pfiffner until January 4, 1932, the further finding being made that Mrs. Grady was at no time his client and she believed the fifty dollars was being applied upon the debt due from her mother, Mrs. Leggett, to Pfiffner. It was also found that the money was applied by petitioner to his own uses and purposes. The committee recommended a private reprimand.

Petitioner says in his brief: "The determination of the propriety of the discipline in this matter rests, we believe, wholly in the determination of who is to be believed." In other words, as in the preceding case, he argues that the testimony is insufficient in certain particulars, but yet he admits that he collected the sum from Mrs. Grady as an attorney's fee for himself "in consideration", as he says,

"of the extension of time of payment and the additional work incidental thereto, and for the fact that client had already been put to suit and entailed the expense and in order to protect client's interests". He insists, however, that his testimony should be believed with respect to reporting the collection to his client Pfiffner, instead of that which is opposed to it. The administrative committee, like any other fact-finding body, was in a position to properly weigh the testimony, and no sufficient reason has been presented why we should disturb that finding. From a reading of the transcript and a review of all the circumstances attending this appeal we have no hesitancy in accepting its conclusion.

 We now come to the recommendation of the Board of Bar Governors. We should revert momentarily to the following facts: One local committee recommended a suspension of eighteen months as a result of the Sheldon charges. Another and a different committee advised reprimand as a result of the one charge found to be true in the Pfiffner case; and the Board of Bar Governors after consolidating the two concluded that disbarment ought to result. According to the testimony of petitioner three other charges have been preferred against him and after investigation dismissed. He is not inexperienced in the profession. He practiced law in Illinois from 1913 to 1925, and from 1926 in California. According to the testimony of Mrs. Grady he exacted the fifty dollars from her because of her fear that he would garnishee her mother's wages and cause the latter to be discharged from her employment, and took from Mrs. Grady a note for $177.85, the entire sum for which action was brought, including court costs. Petitioner knew that Mrs. Leggett and Mrs. Grady were both working and in meager circumstances. Hence we fail to find any mitigating or extenuating circumstances in the particular transaction. If we turn back to the other complaint we discover from the testimony of Mrs. Sheldon, that one of the very first questions petitioner asked of her was her familiarity with San Diego, and as soon as he discovered that she had been there but once and that occasion was several years before, he represented that Mrs. Sheldon had passed by his lots on her trip from the Grant Hotel to Coronado. As we read the record she was about five miles away. Undoubtedly the board considered this testimony as indicating a designing,

scheming mind—one which it felt in both instances proved itself lacking in that first essential—common honesty. However, bearing in mind that local administrative committee number eight, which heard the witnesses and was in a better position to judge the certainty of the offense than we are, or the Board of Governors before whom he failed to appear, recommended suspension for eighteen months, and that the second administrative committee, in like favorable position, recommended a reprimand only, it would seem that suspension for a period of three years should convince petitioner and any other person with similar inclinations that such transactions will not be tolerated in the profession. If so, the double purpose of protecting the public and keeping the profession clean and wholesome would be sufficiently served.

It is therefore ordered that petitioner be suspended from the practice of the law for the period of three years, commencing thirty days after the date of this order.